765 F.2d 147
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES OF AMERICA, PLAINTIFF-APPELLEE,
v.
JAMES R. LEWIS, DEFENDANT-APPELLANT.
 NO. 84-5686
 United States Court of Appeals, Sixth Circuit.
 5/20/85
 
 On Appeal From The United States District Court for the Western District of Tennessee
 BEFORE: KEITH and MARTIN, Circuit Judges, and DIGGS-TAYLOR*.
 PER CURIAM:
 
 
 1
 This is an appeal by the defendant, James R. Lewis, from an order entered upon a jury verdict by the United States District Court for the Western District of Tennessee, Circuit Judge Bailey Brown sitting by designation. On May 2, 1984, the jury returned a verdict finding Lewis guilty of conspiracy to possess stolen mail; conspiracy to forge, utter and publish forged United States Treasury checks; possession of stolen mail; uttering and publishing forged United States Treasury checks; and aiding and abetting in the same, in violation of 18 U.S.C. Secs. 371, 1708, 495, 2, as charged in Counts 1-33 and 66-97 of the indictment. For the reasons set forth below the order of the district court is affirmed.
 
 
 2
 In July 1981, an account was opened at the First American Bank in the name of Lewis Auto Sales. This account was closed in August 1982. During the time this account was opened 38 treasury checks were deposited or submitted for deposit into this account. Of the 38 U.S. Treasury checks presented to the bank, it was established that 36 of them contained forged endorsements. It was also established at trial, through the testimony of a handwriting expert, that 34 of the 36 forged endorsements were in the undisguised handwriting of Mr. Lewis' employee, Mary Wiggins.
 
 
 3
 On appeal, Mr. Lewis argues that the jury's verdict was contrary to the weight of the evidence and resulted in a miscarriage of justice. We do not agree. As this Court has said on many occasions:
 
 
 4
 An appellate court's function in reviewing a verdict of a jury is very limited. We do not sit as a trier of fact and will not enter into a de novo consideration of the evidence. The verdict of the jury cannot be reversed if there is substantial evidence to support the findings of guilt. . . . In considering the sufficiency of the evidence, we do not determine whether it establishes guilt beyond a reasonable doubt, but only that the evidence would permit the triers of facts to find the defendants guilty beyond a reasonable doubt. . . . In considering the sufficiency of the evidence in a criminal case, we must construe the evidence most favorably to the government. . . . This includes the drawing of all reasonable inferences in reasonable credibility determinations favorable to the government. . . . To do otherwise would usurp the perogatives of the jury.
 
 
 5
 United States v. Richardson, 596 F.2d 157, 161 (6th Cir. 1973).
 
 
 6
 From our review of the record we are convinced there was substantial evidence to support the verdict of the jury. The evidence at trial established that of the 38 United States Treasury checks presented for deposit in the Lewis Auto Sales account, 36 were proven to have forged endorsements. Further, the testimony of a handwriting expert established that Mary Wiggins had forged the endorsement on 34 of the checks. It is important to note that in forging the endorsement of these checks, Ms. Wiggins did not attempt to disguise her handwriting. Thus, it was evident, even to the untrained eye, that the same person had signed each of these checks.
 
 
 7
 The apparent nature of the forged endorsements, coupled with the history of transactions on the Lewis Auto account, suggest that Mr. Lewis had entered into an arrangement with Mary Wiggins to forge these checks and deposit them in his account. The history of the account reveals that even though it was opened in July 1981, by April 1982 only four U.S. Treasury checks and been deposited into the account. However, starting in April 1982, there were eight deposits in which over 32 U.S. Treasury checks were placed in the account of Lewis Auto. In reviewing this history of the account, it is important to note that each deposit was made shortly after the checks were issued. For example, on May 4, 1982, Mr. Lewis deposited six checks, five checks dated May 3, 1982, and one check dated April 30, 1982. Consequently, within a five-day period, Mr. Lewis had cashed over $1,800 worth of checks--all of which were signed by Mary Wiggins. This pattern occurred a total of six times, on each occasion a number of checks totalling over a thousand dollars, almost all of them forged by Ms. Wiggins, were deposited into the account shortly after the checks were issued. This pattern of activity alone could support an inference that Mr. Lewis knew the checks were stolen and had embarked on a scheme with others to possess and cash stolen U.S. Treasury checks.
 
 
 8
 Such an inference about Mr. Lewis' complicity is further supported by the fact that Mr. Lewis had actual notice on three separate occasions that he was accepting forged U.S. Treasury checks. On January 25, 1982, May 13, 1982, and July 27, 1982, checks were returned to Mr. Lewis. On each occasion the bank mailed to the appellant a debit notice advising him that the check in question was being returned because of a forged endorsement. Each check that was returned during this period was signed by Mary Wiggins. Even knowing that some of the U.S. Treasury checks he had cashed were forged, Mr. Lewis continued to cash U.S. Treasury checks signed by Mary Wiggins. Seemingly, such transactions, involving thousands of dollars, would only be conducted by someone who in someway was involved in the crime of cashing stolen checks.
 
 
 9
 Additionally, Mr. Lewis' statements to investigators, as well as to the grand jury, further buttress the jury's conclusion that the appellant was a figure in this criminal enterprise. In his initial interview with postal inspectors, Mr. Lewis stated that he required the payees to sign the checks in his presence when he did not know them. On an occasion with Inspector McCray, Mr. Lewis stated that he specifically remembered two payees, E. A. Witherspoon and Maude Wheeler, signing their U.S. Treasury checks in his presence and Mr. Lewis even attempted to describe the appearance of the two people. In a later interview, Mr. Lewis stated that at least 50 percent of the people signed the checks in his presence. Later, before the grand jury, Mr. Lewis stated several times that the people signed the checks in front of him. Moreover, he stated that the people who cashed the checks were different ages, race and sex. All of the testimony above hardly suggests Lewis' innocence given the fact that Mary Wiggins was involved in forging the endorsements on 34 of the 38 U.S. Treasury checks, including the checks of E.A. Witherspoon and Maude Wheeler. In short, Mr. Lewis' false statements to federal investigators and the grand jury clearly suggests that he was attempting to cover-up his criminal activity.
 
 
 10
 Accordingly, the order of the Honorable Bailey Brown, entering judgment upon the jury's verdict of guilty, is hereby affirmed.
 
 
 
 *
 Honorable Anna Diggs-Taylor, United States District Court for the Eastern District of Michigan, sitting by designation